IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 11-23841-CIV-Rosenbaum/Seltzer

IN RE: M/V SEABOARD SPIRIT
SEABOARD SPIRIT LTD as Owner and
SEABOARD MARINE LTD. as Owner
*PRO HAC VICE* of the M/V SEABOARD SPIRIT
for exoneration from or limitation of liability,

Petitioners.
_____/

**PETITIONERS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO ITS CLAIM FOR EXONERATION AGAINST THE CLAIMS OF THE CLAIMANTS**

COMES NOW, Petitioners, SEABOARD SPIRIT LTD. as Owner of the M/V SEABOARD SPIRIT, SEABOARD MARINE LTD. as Owner *Pro Hac Vice* of the M/V SEABOARD SPIRIT, SEABOARD SHIP MANAGEMENT, INC. as the Vessel Manager of the M/V SEABOARD SPIRIT; and SEABOARD MARINE OF FLORIDA, INC. (hereinafter "PETITIONERS"), by and through undersigned counsel and pursuant to the *Federal Rules of Civil Procedure Rule 56* and *Supplemental Rule F For Certain Admiralty And Maritime Claims, of the Federal Rules of Civil Procedure*, hereby files this Motion for Summary Judgment pursuant to their claim for Exoneration, seeking dismissal with prejudice of all claims against them, on the grounds that, based on uncontested facts, Claimant Ossie Hyman cannot prove one or more elements of a cause of action against PETITIONERS and PETITIONERS are entitled to judgment as a matter of law.

I.   **INTRODUCTION**

This is an Exoneration from, or in the alternative, Limitation of Liability action brought by the PETITIONERS for an incident involving Claimant Ossie Hyman ("Hyman"), a

Case 1:11-cv-23841-RSR   Document 88   Entered on FLSD Docket 07/15/2013   Page 2 of 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 11-23841-CIV-Rosenbaum/Seltzer
Page -2-

longshoreman who was involved in an accident during the cargo discharge operations aboard the M/V SEABOARD SPIRIT, the vessel, on May 4, 2011, at the Port of Miami. Hyman died as a result of the injuries sustained during the accident. The overwhelming evidence and testimony conclusively proves that PETITIONERS had no involvement whatsoever in the operations underway at the time of Hyman's accident. Rather all undisputed evidence demonstrates that the accident occurred because the longshoremen – including Hyman – involved in the discharge operations failed to release a lashing chain that was affixed to the chassis (hereinafter the "Equipment") on one end and to the deck of the vessel on the other end. Because this chain was not released, when the longshoremen attempted to move the Equipment off the vessel, the Equipment slid laterally and pinned Hyman against the bulkhead (wall) of the vessel.

The admissible and undisputed evidence will clearly show that the accident was proximately caused solely by the stevedore's failure to remove one of the lashing chains and did not involve the PETITIONERS in any way. Numerous eye witness deposition of Hyman's co-workers have been taken in this case. While several theories about why the chain was not released have been proffered[2], none of these theories are based on personal knowledge and, more

---

[2] The first is that because the equipment was loaded on an incline ramp the longshoremen left the rear chain affixed until the mule connected to move it off the vessel. This is done for safety reasons as it insures the equipment does not suddenly move or roll down the incline ramp once all of the securing chains have been removed. There is testimony from several longshoremen that leaving a chain affixed was standard operating procedure and would explain the presence of a rear lashing chain being left on the chassis in this instance. (See, depositions of Enrique Alemany, pg. 28; Willie Turner, pgs., 11-12, 19, and 21).

The second theory is that the rear lashing chain was left on because there was too much tension on it and it could not be manually removed at first pass by the longshoremen. Now, none of the lashing gang who have been deposed in this case have testified of their own personal knowledge that this was specifically the case. In fact, the only reference to this as even a possibility is a hearsay statement (without reference to its author) to that effect as reported in the OSHA investigation performed well after the fact. So while there is more then some disagreement between the parties as to the reason the lashing gear was not removed respectfully none of this matters nor more importantly prevents this Court from following the applicable case law and granting summary judgment.

importantly, these theories are wholly immaterial to the PETITIONERS' motion because it is undisputed that whatever the reason for the chain remaining in place, it is the stevedore and its employees who are the solely responsible for ensuring that all lashing gear is completely removed and that discharge operations are conducted in a safe manner[3]. This was not done and it is the sole and proximate cause of the accident. Hyman's accident was indeed tragic, but it did not result from a breach of any duty by PETITIONERS.

II.  **MATERIAL ISSUES OF FACT NOT IS DISPUTE**

Pursuant to *Local Rule 7.5(c)* the following are the PETITIONERS statement of material facts not is dispute:

1. At the time of the incident the M/V SEABOARD SPIRIT was located on navigable waters. (See, Claimants' Claim, paragraph 7 [D.E.19]).

2. At the time of the incident the Decedent, Ossie Hyman, was employed as a longshoreman by stevedoring company Eller-ITO. (See, Claimants' Claim, paragraph 6 [D.E.19]).

3. Eller-ITO was engaged in discharge operations of the M/V SEABOARD SPIRIT at the time of the accident. (See, deposition of Willie Turner, pg. 5; Delux Wise, pg. 81; Hector Pazos, pgs. 83, 111; Roland Santos, pg. 65).

4. It was the responsibility of the longshoreman, to discharge the Equipment from the vessel. (See, deposition of Willie Turner, pg. 5; Delux Wise, pg. 81; Enrique Alemany, pg. 7; Torrence Palmer, pg. 4; Roland Santos, pg. 88; See, Claimants' Claim, paragraph 6 [D.E.19]).

5. On the day of the accident, Hyman's role in the operations was that of Striker. (See, deposition of Delux Wise, pg. 29; Enrique Alemany, pg. 11; Torrence Palmer, pgs. 7-8).

---

[3] The undisputed evidence in this case supports that it was a common occurrence in discharge operations that lashing gear would be too tight to be removed by hand. As a result the longshore gang had several different options available to them to deal with this. First, they would use what has been referred to as a "cheater bar" which is a piece of metal that fits over the lashing gear and gives the longshoremen increased leverage to release the chain. If that did not work, the longshoremen would wait until a mule was available and after it was attached to the equipment but well prior to pulling forward it would back up the equipment thereby releasing the tension on the lashing gear and allowing it to be easily and safely removed. (See, Deposition transcripts of Delux Wise, pgs. 26-27; Gerald Wilson, pgs. 17-18, 31-32; and Hector Pazos, pg. 104).

Case 1:11-cv-23841-RSR   Document 88   Entered on FLSD Docket 07/15/2013   Page 4 of 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 11-23841-CIV-Rosenbaum/Seltzer
Page -4-

6. The Equipment was secured to the deck of vessel with lashing chains. (See, deposition of Hector Pazos, pg. 66; Deposition of Delux Wise, pg. 65).

7. One of the lashing chains that was affixed to both the Equipment and the deck of the vessel remained in place at the same time the mule driver attempted to discharge the Equipment from the vessel.  (See depositions of Pazos, pg 66-67; Delux Wise, pg 42; Gerald Wilson, pg. 26).

8. Upon the mules forward movement the rear lashing gear tightened resulting in the equipment sliding laterally and pinning the Decedent to the bulkhead of the vessel. (Deposition of Hector Pazos, pg. 121; Roland Santos, pgs. 43-44; Torrence Palmer, pg. 71).

### III.   MEMORANDUM OF LAW

#### PETITIONER IS ENTITLED TO SUMMARY JUDGMENT

There is only one possible cause of Hyman's accident – that one of the lashing chains remained in place when the mule driver attempted to move the Equipment off the vessel. Whatever reason that may be offered for why the stevedore failed to release the chain, the simple fact is that PETITIONERS cannot be held liable for this failure.  There is no claim or evidence that any employee of PETITIONERS was involved in any way in the operation.  Accordingly, PETITIONERS cannot be held liable and Summary Judgment is warranted.

#### A. SUMMARY JUDGMENT STANDARD

A party to an action is permitted under *Rule 56* of the Federal Rules of Civil Procedure to move for a Judgment on a claim as to which there is no "genuine issue of material fact" and upon which said party is entitled to prevail as a "matter of law." *A.M.R. Enterprises, Inc. v. United Postal Savings Association*, 567 F.2d l277 (5th Cir. l978).

The purpose or rationale behind a Summary Judgment is not to cut litigants off from their right to trial, but to avoid a useless trial where there are no issues to try. *Valdez  v. Graham*, 47l

Case 1:11-cv-23841-RSR Document 88 Entered on FLSD Docket 07/15/2013 Page 5 of 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 11-23841-CIV-Rosenbaum/Seltzer
Page -5-

F.Supp. l49 (M.D. Fla l979). The Court in *Bros. Incorporated v. W. E. Grace Manufacturing Company*, 26l F.2d 428 (5th Cir. l958) recited the following:

> Summary Judgment is a marvelous instrument in expediting the administration of justice. It is the means of which causes or defenses with no real merit are weeded out without the hazard of a decision on an artificial situation described by artful pleadings, or without the cost in precious judicial time of a long protracted trial which ends with a determination that, on the facts viewed most favorably to a party, the claim or defense is not as a matter of law.

A "material fact" for purposes of a Motion for Summary Judgment is one which is determinative of the parties' duties or rights. See, *Atkinson v. Jory*, 292 F.2d l69 (l0th Cir. l96l). Also, a "genuine issue" which precludes a Summary Judgment is defined as one that requires either a Judge or jury to resolve the parties' differing versions of truth at trial. *Allen v. Carlotti*, 400 F.Supp. l037 (S.D. Fla l975).

In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the Supreme Court held that a motion for summary judgment must be granted if, after adequate time for discovery, the nonmovant fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. 477 U.S. at 322. The Court reasoned that in such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." 477 U.S. at 322. Although the Court reiterated that it is the party moving for summary judgment who "bears the initial responsibility" of demonstrating the absence of a genuine issue of material fact, the Court also emphasized that the moving party need not negate the opponent's claim. 477 U.S. at 323.

Case 1:11-cv-23841-RSR Document 88 Entered on FLSD Docket 07/15/2013 Page 6 of 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 11-23841-CIV-Rosenbaum/Seltzer
Page -6-

After all, the Court continued, "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." 477 U.S. at 323-24.

A party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57 (1986). Unsubstantiated assertions are not competent summary judgment evidence, and the party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

For an Exoneration Action, the normal summary judgment standards of *Rule 56* and governing case law applies. *In re Complaint of Royal Carribean Cruises Ltd.*, 459 F.Supp.2d 1284 (S.D.Fla. 2006). In this case, the initial burden is on the Claimants, as this is an Exoneration action. *In re Complaint of Royal Carribean Cruises Ltd.*, 459 F.Supp.2d at 1288-89; *Hercules Carriers, Inc. v. Florida Dept. of Transportation*, 768 F.3d 1558, 1563-64 (11th Cir. 1985). Therefore, Claimants must come forward with competent and admissible evidence of the PETITIONER's negligence before the burden of proof shifts to the PETITIONERS to prove lack of knowledge or privity. *Id.* If there is no evidence of PETITIONER's negligence, then PETITIONERS are entitled to exoneration from all liability and the issue of limitation becomes moot. *In re Complaint of Royal Carribean Cruises Ltd.*, 459 F.Supp. at 1289; *Hebert v. Exxon Corp.*, 1990 WL 19814,*8 (E.D.La. 1990). Only if negligence is found, then must the court

---

[5] That said, the instant motion is limited to the sole issue of Exoneration and does not deal with the issues of limitation of liability which remain for another day, if necessary.

Case 1:11-cv-23841-RSR   Document 88   Entered on FLSD Docket 07/15/2013   Page 7 of 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 11-23841-CIV-Rosenbaum/Seltzer
Page -7-

determine if the PETITIONERS are entitled to a limitation of liability. *In re Complaint of Sheen,* 709 F.Supp. 1123, 1128-29 (S.D.Fla.1989)[5].

### B. PETITIONERS OBLIGATION TO THE DECEDENT UNDER THE SCINDIA DUTIES

In *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981), the Supreme Court held it is undesirable to impose liability on the shipowner or vessel for failing to supervise minutely the stevedore-employer's operations. *See*, *Scindia*, 451 U.S. at 1622-24. Moreover, the Supreme Court has further held that a vessel does not have a duty to supervise or to inspect the work of stevedores before the commencement of, during, or between cargo operations. *See Howlett v. Birkdale Shipping Co.,* 512 U.S. 92, 105 (1994); *Hunter v. Reardon Smith Lines, Ltd.,* 719 F.2d 1108, 1110 (11th Cir. 1983). As a result the shipowner cannot be held liable for injuries to a longshoreman which may result from dangerous conditions that develop during the loading or unloading of cargo, which indisputably is what happened here. *See Prinski v. Termar. Nav. Co.,* 1992 AMC 1541, 1543 (E.D. Pa. 1992).

Based on the following, the *Scindia* Court articulated the narrow scope of a shipowner's duty to longshoremen, identifying three general duties that will be discussed in detail below, which are: 1) the Turnover Duty; 2) Active Control; and 3) the Duty to Intervene. *Id.* at 166-179.

### 1. PETITIONERS DID NOT BREACH THE TURNOVER DUTY

In order to prove that the Turnover Duty was breached, the Claimants must introduce evidence that the hazard was "such that an expert and experienced stevedore would not be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property. *Scindia*, 451 U.S. at 166-167. This duty does not require that a vessel

Case 1:11-cv-23841-RSR   Document 88   Entered on FLSD Docket 07/15/2013   Page 8 of 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 11-23841-CIV-Rosenbaum/Seltzer
Page -8-

owner turn over the vessel in a perfectly safe condition, but rather that, as *Scindia* states, the vessel must exercise ordinary care in light of the fact that the operation will be conducted by an "expert and experienced" longshoreman. *Scindia*, 451 U.S. at 167. Accordingly, the stevedore or longshoreman is primarily chargeable with avoiding all obvious hazards. *Scindia*, 451 U.S. at 180. Where a danger is both obvious and avoidable, a vessel cannot be charged with negligence actionable under the LHWCA. *Sinagra v. Atlantic Ocean Shipping*, Ltd., 182 F.Supp.2d 294, 301(E.D.N.Y. 2001); *Polizzi v. M/V Zephros II Monrovia,* 860 F.2d 147, 149 (5th Cir. 1988); *Kirksey v. Tonghai Mar.*, 535 F.3d 388, 395 (5th Cir. Tex. 2008).

Therefore, in determining whether or not the PETITIONERS turned over a safe vessel, this Court's decision is not to determine whether there was a hazardous condition present but rather whether the condition was **open, obvious, and avoidable** to the Decedent and whether through the exercise of reasonable care he could have carried out his cargo duties in a safe manner notwithstanding. There has been no admissible evidence that the fact that a lashing chain was left attached to the equipment was anything other than an obvious and avoidable condition.

In this case, it is without question that the decision to leave the chain in place and then give the order to discharge the equipment was an avoidable accident. This is not even disputed by the Claimants' own expert witness, Hector Pazos:

> Q. Okay. Do you know whether -- Have you ever heard the term "open and obvious"?
> A. Yes.
> Q. Okay. What do you understand that to mean?
> A. Something that is obvious, the word obvious has a dictionary definition, is clear to any normal person.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 11-23841-CIV-Rosenbaum/Seltzer
Page -9-

Q. Okay. Would you agree with me that the stevedoring gang, it was open and obvious to the stevedoring gang that they should not have been -- no one should be standing between the container and the bulkhead when an effort is being made to move the equipment forward?

A. I believe that they recognize, everybody recognize it was dangerous.

Q. Just so I'm clear, any one of the stevedores would know, because it was open and obvious, that it would be dangerous to stand there when equipment is passing back and forth on it; correct?

6 A. Yes.

(Deposition of Pazos, Claimants' expert, pgs. 109-110).

Q. Do you have any opinion as to whether or not Mr. Hyman knew or should have known that the container, the chassis shouldn't have been moved forward without removing the rear lashing equipment?

A. Yes. I'm pretty sure that he was aware that the chassis should not be moved that way.

(Deposition of Pazos, Claimants' expert pg. 107).

Q. If there is a lashing chain affixed to the container chassis unit, should the striker [in this case the Decedent] instruct you to move forward?

A: No, he shouldn't.

(Deposition of Torrence Palmer, longshoreman, pg. 13).

Q. Is it fair to say that under no circumstances was equipment supposed to be hooked up and moved by a mule, unless all the chains were removed?

A. Right

(Deposition of Gerald Wilson, longshoreman, pg. 18).

Q. If the striker had done his job, the mule operator would not have been instructed to move forward with this chain still affixed, correct?

9

Case 1:11-cv-23841-RSR Document 88 Entered on FLSD Docket 07/15/2013 Page 10 of 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 11-23841-CIV-Rosenbaum/Seltzer
Page -10-

A: That is correct.

(Deposition of Enrique Alemany, Eller-ITO superintendent, pgs. 22-23).

Q. Is it accurate to say that before you give the all clear and tell them to move forward, that all the chains need to be removed from the chassis?

A. Yes.

Q. I mean, the unit can't be removed if there's some chains that are still in place, correct?

A. No, it can't.

(Deposition of Delux Wise, longshoreman, pg. 25).

The law is clear that an experienced longshoreman is required to act reasonably and safely during the course of discharge operations:

Q. Okay. So the basis of your opinion that Mr. Palmer's testimony is unreliable, is that you believe that Mr. Hyman was an experienced longshoreman, and an experienced longshoreman would know better than to give the instruction to move the container when he was in the location where he was; is that correct?

A. Among other things.

(Deposition of Pazos, Claimants' expert pgs. 57-58).

Q Do you have knowledge of how long he had been a longshoreman?

A. I recall meeting him around the time that I began working for Eller.

Q. Oh, '95?

A. About '95 or '96 is when I recall. '96, '97, in that area.

Q. So you describe Ossie Hyman as an experienced professional longshoreman?

A. I do, sir.

(Deposition of Enrique Alemany, Eller-ITO superintendent, pg. 9).

Q. Do you think Mr. Hyman was familiar with working the vessel?

A. Yes.

Case 1:11-cv-23841-RSR Document 88 Entered on FLSD Docket 07/15/2013 Page 11 of 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 11-23841-CIV-Rosenbaum/Seltzer
Page -11-

> Q. And he was an experienced longshoreman, right?
>
> A. Yes.
>
> Q. And that's by virtue of his seniority; he worked so many years?
>
> A. Yes.
>
> (Deposition of Willie Turner, longshoremen supervisor pg. 29).

Additionally, it is undeniable that the Decedent, as the Striker aboard the vessel was required to make certain that all lashing chains were removed on the equipment prior to discharge:

> Q. Well, let me ask you this: If -- is it the responsibility of the mule operator as you understand as part of the gang to ensure that the chassis is -- the whole lashing gear is taken off the chassis before he moved forward; is that his responsibility?
>
> A. No.
>
> Q. Whose responsibility is that?
>
> A. The striker.
>
> Q. Okay. And that's Mr. Hyman?
>
> A. Yes.
>
> (Deposition of Hector Pazos, Claimants' expert pg. 75).

> Q. So one of the striker's responsibilities, one of the responsibilities that you had, was to make sure that all of that lashing equipment was removed from the chassis and then it was free to be moved.
>
> A. Moved, right.
>
> (Deposition of Gerald Wilson, longshoremen pg. 11).

> Q. Is it the function of the striker to determine that all the lashing gear has been removed from the equipment before it's removed from the vessel?
>
> A. Yes.
>
> (Deposition of Enrique Alemany, Eller superintendent pg. 14).

Case 1:11-cv-23841-RSR Document 88 Entered on FLSD Docket 07/15/2013 Page 12 of 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 11-23841-CIV-Rosenbaum/Seltzer
Page -12-

Lastly, it cannot be disputed that this accident was caused (as stated by both of Claimants' experts) because of the decision of the longshoremen to leave the one rear chain in its secured position while at the same time allowing it to be hooked-up and moved forward by a mule operator:

> Q. This particular container involved in Mr. Hyman's accident, why did it slide to the side, to the bulkhead?
> A. Because one lashing remains attached, and the point which was attached to the deck was on the starboard side; so the lashing swings when the container tries to move forward and that way swing to the starboard side.
> (Deposition of Pazos, Claimants' expert, pg. 121).
>
> Q. Would you agree with me, sir, that when the mule driver who was operating the mule attached to the container of the chassis, if the lashing chain was not affixed to the container and pulled forward, this accident wouldn't have happened?
> A. The mechanics would not have been as described here.
> Q. The answer to my question is the accident wouldn't have happened.
> A. I don't believe it would have happened.
> (Deposition of Santos, Claimants expert pgs. 43-44).

It is therefore undisputed that the accident was caused by an open, obvious, and avoidable condition, and therefore the PETITIONERS cannot be charged with a violation of its Turnover Duty, as a matter of law. *Sinagra*, 182 F.Supp.2d at 301; *Polizzi*, 860 F.2d at 149; *Kirksey*, 535 F.3d at 395.

Accordingly, the PETITIONERS did not breach its Turnover Duty because, to the extent that the lashing chain created a hazardous condition at all, its presence, and the fact that is was still affixing the Equipment to the vessel (which is its entire purpose), such a condition was open

Case 1:11-cv-23841-RSR   Document 88   Entered on FLSD Docket 07/15/2013   Page 13 of 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 11-23841-CIV-Rosenbaum/Seltzer
Page -13-

and obvious, and should have easily been known to the longshoremen with the exercise of reasonable care. As such the PETITIONERS cannot be liable as a matter of law and are entitled to summary judgment. *Sinagra*, 182 F.Supp.2d at 301; *Polizzi*, 860 F.2d at 149.

## 2. PETITIONERS DID NOT BREACH THE ACTIVE CONTROL DUTY

The second duty the a shipowner owes to a longshoreman is the Active Control Duty. The vessel interests have no general duty by way of supervision or inspection to "exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore." *Hunter v. Reardon Smith Lines, Ltd.,* 719 F.2d 1108, 1111 (11th Cir. 1983); *See Howlett v. Birkdale Shipping Co.,* 512 U.S. 92, 105 (1994). After cargo operations commence, the Petitioners duty is a "limited one." *Hunter,* 719 F.2d at 1112. Vessel interests may only be held liable if it "actively involves itself in the cargo operations and negligently injures a longshoreman or it fails to exercise due care to avoid exposing longshoreman to harms and hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedore operation." *Scindia,* 451 U.S. at 168.

Active control connotes more than just the casual observation of cargo operations. *Derr v. Kawasaki Kisen K.K.,* 835 F.2d 490, 494 (3rd Cir. 1987). Simply observing cargo operations, as is customarily done by the ship's crew in order to ensure that cargo is not damaged, does not rise to the level of "active control." *Id., See, Bonds v. Mortensen and Lange,* 717 F.2d 123, 127, n.4 (4th Cir. 1983); *Hebert v. Exxon Corp.*, 1990 U.S. Dist. LEXIS 2082, 20 (E.D.La. 1990). Similarly, vessel interests do not have active control when no ship employees are in the area where the incident occurred. *See Manuel v. Cameron,* 103 F.3d 31, 34 (5th Cir. 1997).

Case 1:11-cv-23841-RSR Document 88 Entered on FLSD Docket 07/15/2013 Page 14 of 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 11-23841-CIV-Rosenbaum/Seltzer
Page -14-

In this case, it is undeniable that the accident occurred during discharge operations which had already been "turned over" by the vessel and were being handled and controlled by Eller-ITO and its employee longshoremen:

> Q. Okay? And on the date of the accident, was Eller ITO responsible for the discharge of the cargo from the vessel?
> A. Yes.
> Q. I'm going to refer to the SEABOARD SPIRIT as "the vessel" throughout the deposition, so we are all on the same page.
> A. Okay.
> Q. And I think you confirmed you were the header of the longshoremen responsible for discharge of the cargo that day. Correct?
> A. Yes.
>
> (Deposition of Willie Turner, pg. 5).
>
> Q. It's the job of your gang to discharge the vessel, correct?
> A. Yes.
>
> (Deposition of Delux Wise, pg. 81).

Furthermore, there has been no testimony or evidence that in anyway indicates that the PETITIONERS were actively involved in cargo operations at the time of the accident. Moreover, even if it could be presented that there were crewmembers monitoring the operations or in the vicinity of the accident that in and of itself would be insufficient as a matter of law to indicate active control. *Kawasaki Kisen K.K.*, 835 F.2d at 494; *See, Bonds*, 717 F.2d at 127, n.4. Therefore, PETITIONERS are entitled to summary judgment dismissing Hyman's claim.

Case 1:11-cv-23841-RSR   Document 88   Entered on FLSD Docket 07/15/2013   Page 15 of 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 11-23841-CIV-Rosenbaum/Seltzer
Page -15-

**3. DUTY TO INTERVENE**

Lastly, the Supreme Court in *Scindia* further limited the Duty to Intervene as follows: "shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore, because the LHWCA imposed the primary obligation on the stevedore to intervene." *See Id.* 451 U.S. at 175-76; *Lampkin v. Liberia Athene Transport Co., Ltd.*, 823 F.2d 1497, 1501 (11th Cir. 1987). The duty to intervene is "narrow and requires something more than mere shipowner's knowledge of a dangerous condition." *Singleton v. Guangzhou Ocean Shipping Co.*, 79 F.3d 26, 28 (5th Cir. 1996).

Implicit in establishing liability under the Duty to Intervene is a finding that the PETITIONERS or its crew **had actual knowledge** of a dangerous condition on board the vessel after it turned it over to Eller-ITO Stevedoring. Pointing to this case, there has been absolutely no evidence or testimony that demonstrates that the PETITIONERS had any knowledge whatsoever of any sort of dangerous condition either before or during discharge operations under the control of the longshoremen. Accordingly, PETITIONERS are entitled to summary judgment.

**THE PETITIONERS ARE ENTITLED TO EXONERATION AS A MATTER OF LAW**

Based on the foregoing analysis, it is beyond dispute that there is no evidence that PETITIONERS violated their *905(b)* duties to Hyman in any manner. As such, PETITIONERS are entitled to summary judgment as a matter of law. Moreover, whether a party is seeking summary judgment pursuant to a standard *905(b)* claim or brining a *905(b)* claim pursuant to an Exoneration action, the Court goes through the same analysis in determining whether the party is

Case 1:11-cv-23841-RSR Document 88 Entered on FLSD Docket 07/15/2013 Page 16 of 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 11-23841-CIV-Rosenbaum/Seltzer
Page -16-

entitled to summary judgment. *See, Hebert v. Exxon Corp.*, 1990 WL 19814 (E.D.La. 1990); (*Lampkin v. Liberia Athene Transport Co.*, 823 F.2d 1497 (11th Cir. 1987). Below are cases in which the court, under similar circumstances that are present in this case, granted summary judgment in both exoneration and non-exoneration cases pursuant to *905(b)*. *See, Hebert v. Exxon Corp.*, 1990 WL 19814 (E.D.La. 1990) (The court granted petitioners claim for Exoneration as the claimant failed to prove that the vessel owner had violated any of its *905(b)* duties to the claimant.); *Lampkin v. Liberia Athene Transport Co.*, 823 F.2d 1497 (11th Cir. 1987) (The court affirmed summary judgment for the vessel owner against a longshoreman that was injured during discharge operations as it was held the vessel was not involved in discharge operations and was therefore unaware of any hazards.); *Hudson v. Schlumberger Tech. Corp.*, 452 Fed. Appx. 528 (5th Cir. 2011) (Vessel owner's summary judgment affirmed under 905(b) as the court held that the longshoreman was aware of the hazardous condition as it was plainly visible.); *Kirksey v. Tonghai Mar.*, 535 F.3d 388 (5th Cir. 2008) (The court held that because the defect in the cargo stow was open and obvious to the stevedore, the vessel had no turnover duty to warn against the defect or to correct the unsafe condition and consequently did not breach its 905(b) duties.).

In *Trueba v. Flota Bananera Ecuadorian Lines, Inc.*, 675 F.Supp. 786 (S.D.N.Y. 1987), a longshoreman was injured when he attempted to step over a lashing chain, which was lying across the passageway, and he slipped and fell on the wet deck. *Id.* at 787-88. The court ruled that the chain could have been easily moved and it was the longshoreman's responsibility to clear such obstructions. *Id.* at 789. Accordingly, the court held that under the LHWCA that the

Case 1:11-cv-23841-RSR Document 88 Entered on FLSD Docket 07/15/2013 Page 17 of 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 11-23841-CIV-Rosenbaum/Seltzer
Page -17-

longshoreman failed to prove that the vessel owner had breach any of its duties and dismissed the case. *Id.* at 789-90.

This case, like *Trueba* involves a longshoreman, the Decedent, that died as a result of failing to properly and safely do the job that was assigned to him. In *Trueba* the accident would not have occurred if the longshoreman had cleared the chain from the floor as was his job, the same way that this incident would not have occurred if the Decedent would have properly done his job and not attempted to remove the subject equipment prior to all of the lashing chains being released. In both cases the issue with the lashing chains were conditions that were regularly encountered and more importantly could have been easily remedied.

Another case on point in which summary judgment was granted in a *905(b)* claim is *Sinagra v. Atlantic Ocean Shipping*, Ltd., 182 F.Supp.2d 294 (E.D.N.Y. 2001). In *Sinagra* a longshoreman during unloading of a vessel had his hand crushed while removing a stacking shoe from a shipping container suspended from a crane. *Id.* at 298. The court found that the shipping company did not breach its turnover duty to warn of hazards because stacking shoes were pieces of equipment that a longshoreman could reasonably have expected to encounter, and there was therefore a reasonable legal expectation that the longshoremen would safely deal with them. *Id.* at 301-02.

## CONCLUSION

It is undeniable, as confirmed by Claimants own expert witnesses, that this accident would not have occurred if the longshoremen would have properly done their job and made certain that all the lashing chains were removed prior to giving the order for the equipment to be

Case 1:11-cv-23841-RSR Document 88 Entered on FLSD Docket 07/15/2013 Page 18 of 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 11-23841-CIV-Rosenbaum/Seltzer
Page -18-

discharged. Moreover, as previously discussed the arguments by the Claimants to the contrary are simply a smoke screen to try and divert the Court's attention from its proper legal analysis. There is no denying that this was a tragic accident but that does not change the fact that even if there was some issue with the lashing gear (for which there is no real support) it was nevertheless an avoidable condition that should have and could have easily been remedied by the longshoremen and as such the PETITIONERS cannot be held legally liable under *905(b)* and are entitled to Exoneration. *Sinagra v. Atlantic Ocean Shipping*, Ltd., 182 F.Supp.2d 294 (E.D.N.Y. 2001); *Hebert v. Exxon Corp.*, 1990 WL 19814 (E.D.La. 1990); *Lampkin v. Liberia Athene Transport Co.*, 823 F.2d 1497 (11th Cir. 1987);*Hudson v. Schlumberger Tech. Corp.*, 452 Fed. Appx. 528 (5th Cir. 2011).

WHEREFORE, the Petitioners, for the above stated reasons pray that this Honorable Court grants this their Motion for Summary Judgment pursuant to their claim for Exoneration from the claims of the Claimants, and provide whatever further relief that it deems proper.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO: 11-23841-CIV-Rosenbaum/Seltzer
Page -19-

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __15th___day of ____July____, 2013 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following: **Jack P. Hill, Esq.**, Searcy, Denney, Scarola, Barnhart & Shipley P.A. 2139 Palm Beach Lakes Blvd., West Palm Beach, FL 33409, **Carolyn F. Frank, Esq**. Friedman, Rodman & Frank P.A. 3636 West Flagler Street Miami Florida 33135, **David F. Pope, Esq**. Banker Lopez Gassler PA. 501 E. Kennedy Boulevard, Suite #1500 Tampa, FL 33602 and **James W. McCready III, Esq**. SEIPP & FLICK LLP. Two Alhambra Plaza, Suite #800 Coral Gables, Florida 33134, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

        BLANCK & COOPER, P.A.
        5730 S.W. 74th Street, Suite #700
        Miami, Florida  33143
        Phone:  (305) 663-0177
        Facsimile:  (305) 663-0146

BY:_____//S// Robert W. Blanck, Esq._____
        Robert W. Blanck, Esquire
        Florida Bar Number: 311367
        Email: rblanck@shiplawusa.com
        Jonathan Hernandez, Esquire
        Florida Bar Number: 069047
        Email: jhernandez@shiplawusa.com
        Attorneys for Petitioners

7339/Exoneration.Limitation.Action