UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 11-23841-CIV-RSR

IN RE: M/V SEABOARD SPIRIT, SEABOARD
SPIRIT LTD as Owner and SEABOARD
MARINE LTD. as Owner Pro Hac Vice
of the M/V SEABOARD SPIRIT for exoneration
from or limitation of liability,

    Petitioners.
_____/

**RESPONDENTS/CLAIMANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

COME NOW, Respondents/Claimants, ANTWON HYMAN and SIESHIA NESHAY REID, as Personal Representatives of the ESTATE OF OSSIE HYMAN, by and through the undersigned counsel, and hereby file their Proposed Findings of Fact and Conclusions of Law:

**PROPOSED FINDINGS OF FACT**

1.    This case concerns a fatal accident which occurred on May 4, 2011 on Petitioners' vessel, the M/V SEABOARD SPIRIT, at the Port of Miami.

2.    Petitioners filed a Petition for Exoneration from or Limitation of Liability on October 25, 2011 requesting that this Court adjudge that Petitioners are not liable for Mr. Hyman's death, or if found liable, then to limit Petitioners' liability to the value of the M/V SEABOARD SPIRIT.

3.    Petitioners sought leave of Court and filed their Amended Petition for Exoneration from or Limitation of Liability on March 20, 2012, adding as Petitioners, SEABOARD SHIP MANAGEMENT, INC. and SEABOARD MARINE OF FLORIDA, INC.

1

4. On April 10, 2012, Respondents/Claimants filed their Answer and Affirmative Defenses to the Amended Petition, requesting the Court to deny Petitioners' Amended Petition for Exoneration and Limitation of Liability, and their Amended Claim.

5. The crew of the M/V SEABOARD SPIRIT drafted the cargo stowage plan for the voyage from Nassau, Bahamas to Miami, Florida. (VICHEV DEP. 20:9-21; 24:5-8; 72:21-25; 73:1-15).

6. On May 3, 2011 in Nassau, Bahamas, the blue 8-feet wide 20-feet long container/chassis involved in this accident was stowed on an inclined ramp of the M/V SEABOARD SPIRIT. (TURNER 69:11-13; PAZOS DEP. 88:4-8; SANTOS DEP. 64:6-15; Pazos Report, p. 4).

7. The inclined ramp measured approximately 11 feet and 5 to 7 inches in width including a 1 foot 11 inch walkway. (SAUER 24 19-20; 39:11-14; PAZOS DEP. 89:15-17).

8. On May 3, 2011, Petitioners' crewmembers of the M/V SEABOARD SPIRIT secured the cargo loaded on the vessel in Nassau, Bahamas which included any lashing of the 20-foot blue container/chassis and the white mule on the inclined ramp. (VICHEV DEP. 16:1-11).

9. Petitioners' crew of the M/V SEABOARD SPIRIT installed and tensioned the lever chain binders for the blue container/chassis involved in the accident. (Pazos Report, p. 20).

10. There were no other persons or entities contracted or employed to secure the cargo loaded on the vessel in the Bahamas. (VICHEV DEP. 16:1-11).

11. Petitioners did not place lashings in front of the blue container/chassis.

12. Instead, Petitioners stowed a mule in front of the blue container/chassis which caused undue tension on the rear lashing.

13. On May 3, 2011, the M/V SEABOARD SPIRIT sailed from Nassau, Bahamas and after a sea passage, arrived at the Port of Miami on May 4, 2011.

14. Ossie Hyman, working for Eller-ITO, was involved in the cargo discharge operations of the vessel in the Port of Miami on May 4, 2011. (TURNER DEP. 5; WISE DEP. 81; PAZOS DEP. 83:1-7).

15. Petitioners' crew of the M/V SEABOARD SPIRIT had full control of the walkway on the inclined ramp. (Pazos Report, p. 5).

16. The work area provided by Petitioners to Eller-ITO's longshoremen in order to discharge the blue container/chassis on the ramp encroached on the 1-foot 11-inch walkway. (Pazos report, p. 5).

17. The area between the blue container/chassis and the bulkhead of the vessel constituted an unreasonably dangerous/unsafe area on Petitioners' vessel. (PAZOS DEP. 58:7-12).

18. The inclined ramp of the vessel provided by Petitioners to the discharging longshoremen had an unsafe design.

19. One of the rear lashing chains of the blue container/chassis could not be removed by the longshore gang. (WILSON DEP. 27:19 – 28:1; WISE DEP. 36:1-7; 42:4-8; 43:1-5; 44:4-6; SAUER DEP. 77:1-15; PAZOS 93:10-14; 103:9-12).

20. The rear lashing chain could not be removed because it was tight. (WISE DEP. 43:1-5; 44:4-6; Pazos Report, p. 6; SANTOS DEP. 63:22-24).

21. The rear lashing which was unable to be removed from the blue container/chassis stowed on the inclined ramp constituted an unreasonably dangerous/unsafe condition.

22. The M/V SEABOARD SPIRIT controlled the lashing chain gear on its vessel. (TURNER 68:4-16; ALEMANY DEP. 59:23-25; 60:1-18).

23. There was no routine maintenance or inspections of the lashing equipment on the vessel. (Exhibit A: MARSHALL DEP. 6:13; Pazos Report, p. 7).

24. There was miscommunication between Torrence Palmer (the mule operator) and Ossie Hyman during discharge operations.

25. Petitioners did not use chocks between the tires of the blue container/chassis to secure it in position on the inclined ramp.

26. Torrence Palmer was able to drive the mule forward with the rear lashing chain still attached to the blue container/chassis due to the Petitioners' failure to place chocks between the tires of the blue container/chassis prior to the voyage from Nassau, Bahamas to the Port of Miami.

27. As a result of the lack of chocks, the blue container/chassis shifted which pinned Mr. Hyman between the bulkhead of the vessel and the container. (SAUER DEP. 28:9-10; Pazos Report, p. 4).

28. Chocks would have prevented the mule operator from moving forward even if the rear lashing chain was still attached.

29. The M/V SEABOARD SPIRIT's lashing inventory does not show chocks as part of its inventory. (SAUER DEP. 56:17-20; SANTOS DEP. 96:25; 97:1-13).

30. Petitioners' crew of the M/V SEABOARD SPIRIT are responsible for placing wheel chocks. (ALEMANY DEP. 61:10-20; WILSON DEP. 49:24; VICHEV DEP. 16:16-25; 17:1-9; SANTOS 75:21-25; 76:1; Pazos Report, p. 5).

31. Petitioners had actual and/or constructive knowledge of existing dangerous conditions on its vessel prior to, during, and after discharge operations began.

32. Petitioners had active control of the inclined ramp and the area where the accident took place.

33. The Chief Mate or Duty Deck Officer supervised cargo operations on the M/V SEABOARD SPIRIT. (STEPIEN DEP. 56:8-10).

34. Petitioners did not take reasonable steps to determine whether its equipment, lashing gear, was safe before turning over the vessel to the discharging stevedores.

35. The malfunctioning/defective lashing gear was a hazard under Petitioners' control.

36. Petitioners failed to warn on turning over the vessel of hidden defects of which it knew or should have known.

37. Petitioners had a duty to intervene due to a reasonable belief that the longshoremen would not remedy the dangerous conditions.

38. Petitioners failed to take action where danger to longshoremen arose from the malfunctioning and/or defective condition of the vessel's gear being used in cargo operations.

39. Petitioners were responsible for supervising cargo discharge operations on its vessel.

40. The narrow area used to discharge containers/chassis on the inclined ramp between the container/chassis and bulkhead of the vessel including the walkway was a hazard under Petitioners' control.

41. The malfunction, defect and/or danger of the rear lashing chain was not an open and obvious condition to the discharging longshoremen.

42. Petitioners' crew prior to sailing from Nassau, Bahamas, did not check the correctness of the securing of the blue container/chassis involved in Mr. Hyman's accident.

43. Petitioners did not inspect securing devices to ensure that the blue container/chassis remained safely secured throughout the voyage.

44. A legal cause of the fatal accident was Petitioners' failure to use chocks to prevent movement of the blue container/chassis which crushed Mr. Hyman.

45. A legal cause of the fatal accident was Petitioners' failure to use front lashings to secure the blue container/chassis causing undue tension on the rear lashing.

46. A legal cause of the fatal accident was the malfunctioning rear lashing chain which could not be removed.

47. Petitioners failed to exercise reasonable care in the performance of loading stevedore duties.

48. Mr. Hyman exercised reasonable care when he performed discharge operations.

49. As to damages, the Court finds that the damages exceed the amount of Limitation Fund.

## PROPOSED CONCLUSIONS OF LAW

1. The Court has personal and subject matter jurisdiction over all parties hereto.

2. Venue is proper with this Honorable Court.

3. The substantive law applicable to the rights and duties of the parties is general maritime law of the United States.

4. The question of negligence is to be governed by common tort law.

**A. Standard of Care**

5. Claims subject to the Limitation of Liability Act, 46 U.S.C. §§30501-30512, *et seq.*, "are those arising from…any loss, damage or injury by collision, or any act, matter or thing…without the privity or knowledge of the owner." 46 U.S.C. §30505(b).

6. The Limitation of Liability Act, 46 U.S.C. §§30501-30512, *et seq.*, and the Scindia duties do not apply when the vessel owner's negligence occurred while acting in its capacity as stevedore. Grennan v. Crowley Marine Servs., No. C05-1504-JCC, 2006 U.S. Dist. LEXIS 14040 (W.D. Wash. Mar. 10, 2006); Gravatt v. City of New York, 226 F.3d 108 (2d Cir. 2000). If the vessel owner's negligence occurred while acting in its capacity as stevedore, then the duty owed by the vessel owner is that of a stevedore under general maritime law.

7. The loading and securing of cargo onto the vessel is a stevedore capacity act.

8. The standard of care of a stevedore is to load and secure cargo in such a way that an expert and experienced stevedore will be able to discharge the cargo with reasonable safety by exercising reasonable care. Couch v. Cro-Marine Transport, Inc., 44 F.3d 319 (5th Cir. 1995).

9. Because Petitioners acted in the dual-capacity as the loading stevedore in Nassau when they negligently secured the blue container/chassis on the M/V SEABOARD SPIRIT, and as owner of the M/V SEABOARD SPIRIT, Petitioners are not entitled to the benefits of the Limitation of Liability Act with respect to their liabilities as loading stevedore and/or as owner of the vessel.

**B. Scindia Duties Breached**

10. The cargo was inadequately secured on the vessel in Nassau, Bahamas by the Petitioners.

11. Petitioners' use of defective/dangerous lever chain binders, failure to use chocks, and defective/dangerous access ramp created hazardous conditions.

12. Each of the hazardous conditions contributed to the blue container/chassis shifting and, thereby, fatally crushing Mr. Hyman.

13. Even if the Court determines that the Scindia duties do apply to the instant matter, any relief to Petitioners should be denied because Petitioners breached one or more of the duties.

14. Under the Scindia, a vessel owner may be liable for injuries sustained by a longshoremen a) if the vessel owner fails to warn on turning over the ship of hidden defects of which he should have known; b) for injuries caused by hazards under the control of the ship; **or** c) if the vessel owner fails to intervene in stevedore's operations when he has actual knowledge both of the hazard and that the stevedore, in the exercise of "obviously improvident" judgment means to work on in the face of it and therefore cannot be relied on to remedy it.  Scindia Steam Navigation Co., Ltd. v. De Los Santos, 451 U.S. 156 (1981); Couch v. Cro-Marine Transport, Inc., 44 F.3d 319 (5th Cir. 1995).

15. Petitioners breached their turn over duty when they failed to warn the discharging stevedore that the container/chassis was not properly secured; that Petitioners used malfunctioning/defective/dangerous lever chain binders in securing the rear of the blue container/chassis; that no chocks were utilized to secure the tires on the blue container/chassis or the back tires of the white mule; and that the inclined ramp owned and controlled by the Petitioners on which the container/chassis was placed by Petitioners was too narrow for workers to perform required services.

16. Petitioners breached their active control duty when Petitioners, by controlling and performing the securing of the cargo on the vessel, used defective lever chain binders and provided the unsafe inclined ramp on their vessel that was too narrow for longshoremen to perform their required services around the rolling/moveable cargo.

17. Petitioners breached their duty to intervene when they knew of the inadequate lashings they used, their failure to use chocks on the tires of the blue container/chassis, their defective and unsafe inclined ramp, and failed to correct or remedy those hazardous conditions.

**C. Privity or Knowledge**

18. Privity or knowledge can be established in two ways: a) where the vessel owner had actual knowledge of the negligent acts that contributed to the loss; or b) where a reasonable inspection would have led to the requisite knowledge. In the Matter of Palmer Johnson Savannah, Inc., 1 F.Supp.2d 1377 (S.D. Ga. 1997); Suzuki Orange Park, Inc. v. Shubert, 86 F.3d 1060 (11th Cir. 1996); Hercules Carriers, Inc. v. Claimant State of Florida, 786 F.2d 1558 (11th Cir. 1985); McNeil v. Lehigh Valley R.R., 387 F.2d 623 (2d Cir. 1967).

19. The test of whether it is appropriate to impute privity or knowledge focuses on the subordinate's function over his title. In the Matter of Palmer Johnson Savannah, Inc., 1 F.Supp.2d 1377 (S.D. Ga. 1997).

20. The Chief Mate or Duty Deck Officer supervised cargo operations on the M/V SEABOARD SPIRIT.

21. A reasonable inspection by Petitioners' supervisors would have led to the requisite knowledge of the unsafe conditions Petitioners' crewmembers created in Nassau, Bahamas which was likely to produce or contribute to a loss.

22. Petitioners cannot establish the requisite lack of privity or knowledge to maintain their limitation action.

23. Petitioners had actual and/or constructive knowledge since their crew improperly secured the blue container/chassis by one or more of the following means: malfunctioning lashing gear,

lack of chocks on the tires, and improperly designed ramp which was unsafe on which they placed the blue container/chassis for discharge by the longshoremen.

### D. Negative Inference

24. Petitioners failed to preserve material evidence with a culpable state of mind. Petitioners' failure to preserve warrants an adverse inference that the documents would have shown that Petitioners did not purchase appropriate lashing equipment for use on the inclined ramp, used dangerous and/or defective equipment to secure the blue container/chassis involved, did not use chocks to secure the blue container/chassis involved, did not maintain their lashing gear/equipment, did not properly inspect their lashing gear/equipment, did not periodically inspect the lashing gear/equipment prior to and during the voyage from Nassau to Port of Miami, did not adjust the lashings during the course of the voyage, did not repair lashing gear, and did not remove dangerous and/or defective lashing gear/equipment.

### E. Conclusion

25. Based on the foregoing evidence and legal principles, Petitioners are denied exoneration from and limitation of liability associated with the loss sustained by Respondents/Claimants.

Respectfully submitted,

By: /s/Carolyn F. Frank
Carolyn F. Frank
Florida Bar No. 91138
FRIEDMAN, RODMAN & FRANK, P.A.
3636 West Flagler Street
Miami, Florida 33135
Telephone: (305) 448-8585
Facsimile: (305) 448-9818
Email: carolynfrank@comcast.net

And

David F. Pope
Florida Bar No. 164452
BANKER LOPEZ GASSLER P.A.

501 E. Kennedy Boulevard
Suite 1500
Tampa, FL 33602
Telephone: (813) 221-1500
Facsimile: (813) 222-3066
Email: dpope@bankerlopez.com
Attorneys for Respondents/Claimants Antwon
Hyman and Sieshia Neshay Reid, As Personal
Representatives of the Estate of Ossie Hyman

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 6, 2013, the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either by transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

By: /s/Carolyn F. Frank
Carolyn F. Frank
Florida Bar No. 91138
FRIEDMAN, RODMAN & FRANK, P.A.
3636 West Flagler Street
Miami, Florida 33135
Telephone: (305) 448-8585
Facsimile: (305) 448-9818
Email: carolynfrank@comcast.net

And

David F. Pope
Florida Bar No. 164452
BANKER LOPEZ GASSLER P.A.
501 E. Kennedy Boulevard
Suite 1500
Tampa, FL 33602
Telephone: (813) 221-1500
Facsimile: (813) 222-3066
Email: dpope@bankerlopez.com
Attorneys for Respondents/Claimants Antwon Hyman and Sieshia Neshay Reid, As Personal Representatives of the Estate of Ossie Hyman

**SERVICE LIST**

In Re: M/V Seaboard Spirit, Seaboard Spirit Ltd, et al.
Case Number: 1:11-cv-23841-RSR
United States District Court, Southern District of Florida

Robert W. Blanck, Esquire
Jonathan Hernandez, Esquire
BLANCK & COOPER, P.A.
5730 S.W. 74th Street, Suite 700
Miami, FL 33143
Telephone: (305) 663-0177
Facsimile: (305) 663-0146
Email: rblanck@shiplawusa.com
Email: jhernandez@shiplawusa.com
Attorneys for Petitioners

James W. McCready, III, Esquire
SEIPP & FLICK, LLP
Two Alhambra Plaza, Suite 800
Coral Gables, FL 33134
Telephone: (305) 995-5600
Facsmile: (305) 995-6100
Email: jmcready@seippflick.com
Attorneys for Respondent/Claimant, Signal Mutual Indemnity Association, Ltd.

Jack P. Hill, Esquire
SEARCY DENNEY SCAROLA BARNHART & SHIPLEY, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
Telephone: (561) 686-6300
Facsimile: (561) 383-9424
Email: JPH@searcylaw.com
Attorneys for Respondent/Claimant Willie Hyman

David F. Pope, Esquire
BANKER LOPEZ GASSLER P.A.
501 E. Kennedy Boulevard
Suite 1500
Tampa, FL 33602
Telephone: (813) 221-1500
Facsimile: (813) 222-3066
Email: dpope@bankerlopez.com
Attorneys for Respondents/Claimants Antwon Hyman and Sieshia Neshay Reid, As Personal Representatives of the Estate of Ossie Hyman